UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GGNSC LOUISVILLE CAMELOT, LLC, et al.,                  Plaintiffs,

v.                                Civil Action No. 3:17-cv-127-DJH

JOYCE COPPEDGE, *as Administratrix of the Estate of Amanda Coppedge*,                          Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Joyce Coppedge sued various GGNSC entities and affiliates in Jefferson Circuit Court on behalf of her mother-in-law Amanda Coppedge, who was a resident of Golden LivingCenter – Camelot, a skilled nursing facility located in Louisville, Kentucky, and operated by GGNSC.[1] (*See* D.N. 1-2) Coppedge alleges that GGNSC violated Amanda's rights as a nursing-home resident under Kentucky law and negligently injured her, ultimately resulting in her wrongful death. (*Id.*, PageID # 27–36, 42–43) Coppedge also sued two Golden LivingCenter administrators, asserting similar claims. (*Id.*, PageID # 38–43)

GGNSC filed this action pursuant to the Federal Arbitration Act, seeking to compel arbitration of Coppedge's claims and enjoin her from pursuing the state-court action. (D.N. 1) GGNSC has moved to compel arbitration. (D.N. 5) Coppedge moves to dismiss on various grounds. (D.N. 6) For the reasons set forth below, the Court will deny Coppedge's motion to dismiss and grant GGNSC's motion to compel arbitration, excluding Coppedge's wrongful-death

---

[1] Named as defendants in the state-court action are GGNSC Louisville Camelot, LLC; GGNSC Administrative Services, LLC; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; Golden Gate National Senior Care, LLC; Golden Gate Ancillary, LLC; GGNSC Clinical Services, LLC; GPH Louisville Camelot, LLC; Clifton Lake, in his capacity as Administrator of Golden LivingCenter – Camelot; and Kathy Dearing, in her capacity as Administrator of Golden LivingCenter – Camelot.

claim. Coppedge will accordingly be enjoined from continuing the state-court action on all but the wrongful-death claim.

## I. Background

In November 2013, Golden LivingCenter – Camelot admitted Amanda Coppedge as a resident. (D.N. 1-2, PageID # 19) As part of the admissions process, Joyce Coppedge, allegedly acting lawfully as Amanda's attorney-in-fact, executed an arbitration agreement. (*See* D.N. 1-1) The ADR Agreement requires the parties to arbitrate

> all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

(*Id.*, PageID # 12) The Agreement bound Amanda and her legal representatives. (*Id.*, PageID # 11)

Joyce Coppedge asserts various claims of negligence against GGNSC in the state-court action on Amanda's behalf. (*See* D.N. 1-2) According to the state-court complaint, GGNSC failed to discharge its obligations of care to Amanda Coppedge, and in so failing, caused Amanda to suffer injuries, which allegedly resulted in her wrongful death. (*See id.*).

In this case, GGNSC seeks to compel arbitration of Coppedge's claims pursuant to the Federal Arbitration Act. (D.N. 1) Because the FAA does not provide federal-question jurisdiction, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21–22 n.32 (1983), GGNSC invoked the Court's diversity jurisdiction. (*See* D.N. 1, PageID # 5) Coppedge argues that diversity is lacking and that dismissal is warranted on various other legal and equitable grounds. (*See* D.N. 6-2)

## II. Motion to Dismiss

According to Coppedge, the present action should be dismissed (i) for GGNSC's failure to join an indispensable party; (ii) on the basis of *Colorado River* abstention; (iii) because the Federal Arbitration Act does not apply; (iv) because she did not have the requisite authority to sign the ADR Agreement on Amanda's behalf; (v) because the ADR Agreement is unconscionable; (vi) because of the Anti-Injunction Act; (vii) and because the wrongful-death claim is not subject to the ADR Agreement. (*See* D.N. 6-2) This Court has previously found that wrongful-death claims are not barred by arbitration agreements between decedents and nursing homes, *see Brandenburg Health Facilities, LP v. Mattingly*, No. 3:15-cv-833-DJH, 2016 WL 3448733, at *6 (W.D. Ky. June 20, 2016), and the same reasoning applies here. However, the Court has addressed—and rejected—Coppedge's remaining arguments in numerous recent cases. *See, e.g.*, *GGNSC Louisville St. Matthews v. Grevious*, No. 3:16-cv-829-DJH, 2017 WL 3623805 (W.D. Ky. Aug. 23, 2017); *Mattingly*, 2016 WL 3448733; *GGNSC Louisville Mt. Holly, LLC v. Mohamed–Vall*, No. 3:16-cv-136-DJH, 2016 WL 9024811 (W.D. Ky. Apr. 6, 2016); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH, 2016 WL 815295 (W.D. Ky. Feb. 29, 2016). Coppedge is represented by the same counsel that represented defendants in those cases, and her lawyers have submitted briefs in this litigation containing legal arguments practically identical to those the Court considered and rejected in previous cases. The Court's discussion of the pending motions will accordingly be brief. Consistent with its prior rulings, the Court will deny Coppedge's motion and compel her to arbitrate all but the wrongful-death claim.

**a. Jurisdiction**

Coppedge first argues that this court lacks jurisdiction because indispensable nondiverse parties (i.e., Golden LivingCenter administrators Clifton Lake and Kathy Dearing) were not joined. (D.N. 6-2, PageID # 123–36) Contrary to Coppedge's assertion, the nursing-home administrators are not indispensable: "the Court can decide the entire controversy in [their] absence; [their] interests in the litigation are the same as [GGNSC's]; and there is no danger of inconsistent obligations." *Grevious*, 2017 WL 3623805, at *2; *see also* Fed. R. Civ. P. 19(a); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001) (finding that an investment brokerage firm's branch manager was not an indispensable party to a federal action to compel arbitration).

Coppedge's reliance on *Cytec Industries, Inc. v. Powell*, 630 F. Supp. 2d 680 (N.D. W. Va. 2009), does not change this conclusion. As the Eastern District of Kentucky previously observed, "*Cytec* has no precedential effect on this Court [and] the conclusion reached in *Cytec* directly contradicts the holdings of many courts in this District and beyond that nursing home administrators who are named as defendants in parallel state court actions are not indispensable parties to [a federal action to compel arbitration]." *GGNSC Frankfort, LLC v. Tracy*, No. 14-30-GFVT, 2015 WL 1481149, at *6 (E.D. Ky. Mar. 31, 2015). Thus, under these circumstances, the fact that Lake and Dearing may be Kentucky citizens does not deprive the Court of diversity jurisdiction. *See Grevious*, 2017 WL 3623805, at *2.

Similarly, Coppedge's reliance on *Vaden v. Discover Bank*, 556 U.S. 49 (2009), is misplaced. *Vaden* does not apply in diversity cases. *See Watkins*, 2016 WL 815295 at *2. Thus, the Court will not "look through" to the underlying state-court action to determine whether subject-matter jurisdiction exists. *See id*.

**b. Colorado River Abstention**

Coppedge next asks the Court to abstain from exercising jurisdiction pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). (D.N. 6-2, PageID # 136–40) The *Colorado River* Court emphasized, however, that abstention is the exception, not the rule: "abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." 424 U.S. at 813. To determine if the Court should abstain under *Colorado River*, the Court considers six factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (alteration in original) (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). As was the case in the Court's previous opinions, these factors weigh heavily against abstention here. First, there is no property at issue. *See Mattingly*, 2016 WL 3448733, at *3. Second, this Court is just as convenient to the parties, as it sits a few city blocks from the Jefferson Circuit Court. *See Grevious*, 2017 WL 3623805, at *3. Third, because the Court will compel arbitration of the majority of Coppedge's claims, there will be little piecemeal litigation among the existing parties. *Id.* Fourth, although the state-court action was filed first, it has not proceeded to the merits. *See Mattingly*, 2016 WL 3448733, at *3 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.")). Fifth, the governing law here is federal. *Id.* As the Court found in *Grevious*, "the sixth factor is neutral; neither the

state court nor this Court is more likely to adequately protect [GGNSC's] rights." 2017 WL 3623805, at *3. Seventh, the proceedings are both at preliminary stages. *Mattingly*, 2016 WL 3448733, at *3. Finally, there is concurrent jurisdiction. *Id*.

In sum, the *Colorado River* factors do not weigh in favor of abstention, and Coppedge's argument fails. Her reliance on *Preferred Care of Delaware, Inc. v. VanArsdale* does not change this conclusion. There, the state court had already determined that the ADR agreement at issue was not enforceable. 676 F. App'x 388, 395 (6th Cir. Jan. 13, 2017). That circumstance is not present in this case.

**c. Interstate Commerce**

Coppedge next presents several arguments asserting that the underlying ADR Agreement is invalid and unenforceable. She first argues that the Agreement is unenforceable because "it does not evidence a transaction involving interstate commerce" as required by the FAA. (D.N. 6-2, PageID # 141) *See also* 9 U.S.C. § 2. But as the Court has explained in multiple previous decisions, this argument is meritless: "the Sixth Circuit has determined that the nursing-home industry affects interstate commerce." *Grevious*, 2017 WL 3623805, at *3 (citing *Glen Manor Home for the Jewish Aged v. N.L.R.B.*, 474 F.2d 1145, 1149 (6th Cir. 1973)); *see also Mattingly*, 2016 WL 3448733, at *5; *Mohamed-Vall*, 2016 WL 9024811, at *6.

**d. Power of Attorney**

Coppedge next argues that she lacked authority under the power of attorney to bind Amanda to arbitration. (D.N. 6-2, PageID # 143–45) The Court disagrees. Coppedge relies heavily on *Extendicare Home, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015) and *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012). Neither case is controlling here, however, in light

of the Supreme Court's recent decision in *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421 (2017).

In *Whisman*, the Kentucky Supreme Court held that the power to waive the principal's right to trial by jury "must be unambiguously expressed in the text of the power-of-attorney document in order for that authority to be vested in the attorney-in-fact." 478 S.W.3d at 328. And in *Ping*, the Kentucky Supreme Court held that the scope of authority created in a POA agreement must "*generally* . . . be express." 376 S.W.3d at 592 (emphasis added). However, the United States Supreme Court recently rejected this reasoning. In *Kindred*, the Supreme Court held that "[t]he Kentucky Supreme Court's clear-statement rule . . . fails to put arbitration agreements on an equal plane with other contracts." 137 S. Ct. at 1423–24. "Such a rule is too tailor-made to arbitration agreements—subjecting them, by virtue of their defining trait, to uncommon barriers—to survive the FAA's edict against singling out those contracts for disfavored treatment." *Id*. at 1427.

"Following *Kindred*, then, the proper inquiry is whether the grant of authority contained in the power of attorney is 'sufficiently broad to cover executing an arbitration agreement.'" *GGNSC Louisville Camelot, LLC v. Coppedge*, 3:16-CV-00834-TBR, 2017 WL 3430579, at *5 (W.D. Ky. Aug. 9, 2017) (quoting *Kindred*, 137 S. Ct. at 1429). Here, the POA contains a general grant of authority vesting Coppedge with "full power and authority to do every act necessary, requisite, or proper" as Amanda could do personally. (D.N. 1-3, PageID # 47) This language undoubtedly encompasses the power to enter into an arbitration agreement. *See Golden Gate Nat'l Senior Care, LLC v. Hudson*, No. 3:17-cv-00431-JHM, 2017 WL 4274167, at *2–3 (W.D. Ky. Sept. 26, 2017); *Coppedge*, 2017 WL 3430579 at *5. Therefore, Coppedge possessed the requisite authority to enter into the ADR Agreement.

7

### e. Unconscionability

Coppedge also maintains that the ADR Agreement should not be enforced because it is unconscionable. (D.N. 6-2, PageID # 145–47) As this Court and others have repeatedly discussed, the fact that the nursing-facility admissions process "entails a great deal of paperwork—similar to 'buying a house or a car, visiting the doctor, or starting a job'—does not render the ADR Agreement procedurally unconscionable." *Grevious*, 2017 WL 3623805, at *4 (quoting *Watkins*, 2016 WL 815295, at *6). Nor is the ADR Agreement substantively unconscionable. Like similar agreements that this Court has considered, the ADR Agreement here "is plainly stated . . . it does not limit recovery; it is reciprocal; and [Coppedge] could have opted out of the agreement within thirty days of signing it." *Mattingly*, 2016 WL 3448733, at *5. Additionally, the agreement was not a precondition to admission to Golden LivingCenter. (*See* D.N. 1-1, PageID # 11)

### f. Anti-Injunction Act

Coppedge also argues that the Anti-Injunction Act prevents this Court from enjoining the state-court action and that this action therefore must be dismissed. (D.N. 6-2, PageID # 147–50) As the Court has noted previously, however, "a district court's injunction of state-court proceedings after compelling arbitration [does] not violate the Anti-Injunction Act." *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *10 (W.D. Ky. Dec. 19, 2013) (citing *Great Earth*, 288 F.3d at 893). Thus, enjoining Coppedge from proceeding against GGNSC in the state-court action will not violate the Anti-Injunction Act. *See Mattingly*, 2016 WL 3448733, at *5.

**g. Wrongful Death**

Finally, recent Sixth Circuit caselaw makes clear that this Court cannot compel arbitration of Coppedge's wrongful-death claim. *See Richmond Health Facilities, et al. v. Nichols*, 811 F.3d 192 (6th Cir. Jan. 15, 2016); *see also Mattingly*, 2016 WL 3448733 at *6. In *Nichols*, the Sixth Circuit affirmed a decision from the Eastern District of Kentucky that Kentucky state law treats wrongful-death claims as independent of any claims held by the decedent. Beneficiaries of a wrongful-death claim are thus not barred by arbitration agreements between decedents and nursing homes from pursuing a wrongful-death claim in court. *Id.* at 197. Coppedge signed the arbitration agreement while acting as attorney-in-fact for Amanda Coppedge. Although Amanda was bound by the agreement, she had "no cognizable legal rights in the wrongful death claim[]" that Coppedge now pursues. *Id.* (quotation omitted). And so, "the [arbitration agreement] cannot be enforced against" Coppedge. *Id.* (citation omitted). Given this binding authority, the Court will not compel arbitration of the wrongful-death claim. Coppedge may pursue that claim in state court.

### III. Motion to Compel Arbitration

The Court will grant GGNSC's motion to compel arbitration and enjoin Coppedge from pursuing the state-court action with respect to all of her claims except the wrongful-death claim. The FAA states that

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9

9 U.S.C. § 4. The Act further provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When deciding whether to compel arbitration, this Court must (1) "determine whether the parties agreed to arbitrate"; (2) "determine the scope of that agreement"; (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable"; and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Here, the parties executed a valid arbitration agreement that requires arbitration of the claims asserted in Coppedge's Jefferson Circuit Court complaint. (*See* D.N. 1-1) Furthermore, other than her wrongful-death claim, Coppedge's claims fall within the scope of the Agreement, and no federal statutory claims are asserted. (*See id.*; D.N. 1-2) Therefore, the Court will compel arbitration of Coppedge's claims, excluding her wrongful-death claim.

Coppedge's response to GGNSC's motion to compel arbitration merely restates her arguments in the motion to dismiss. (*See* D.N. 7-1) The Court has already addressed these arguments.

### IV. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Coppedge's motion to dismiss (D.N. 6) is **DENIED**.

(2) GGNSC's motion to compel arbitration (D.N. 5) is **GRANTED**. The parties are **COMPELLED** to arbitrate pursuant to the terms of the Alternative Dispute Resolution Agreement (D.N. 1-1) the claims asserted by Coppedge in Jefferson Circuit Court, excluding Coppedge's wrongful-death claim.

(3) Coppedge is **ENJOINED** from proceeding against GGNSC in the Jefferson Circuit Court action on all but the wrongful-death claim.

(4) Counsel shall promptly inform the Jefferson Circuit Court of this Order.

(5) Pursuant to 9 U.S.C. § 3, this proceeding is **STAYED** pending conclusion of the parties' arbitration, at which time the Court will decide whether to enter judgment approving any arbitral award.

(6) The parties shall submit a joint status report every **ninety (90) days** from the date of entry of this Order until the conclusion of the arbitration. The parties shall promptly report on the resolution of the arbitration or of any settlement.

March 19, 2018

**David J. Hale, Judge**
**United States District Court**